UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LISA M. FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 14-407-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Lisa M. Foster ("Foster" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 11, 12] Foster argues that the administrative law judge ("ALJ") assigned to her case erred by finding that she is not entitled to a period of disability, disability insurance benefits, and supplemental security income. [Record No. 11, p. 3] However, the Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 12, p. 7] For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Foster.

**I.**

On March 20, 2012, Foster filed an application for supplemental security income under Title XVI of the Social Security Act ("the Act"). [Administrative Transcript, "Tr.," p. 323] She alleged a disability beginning November 28, 2010. [*Id.*, p. 321] Foster, along with

- 1 -

attorney Rodney Davis and vocational expert ("VE") Martha Gross, appeared before ALJ Christopher R. Daniels on May 23, 2013, for an administrative hearing. *[Id.*, p. 193–218] On June 21, 2013, ALJ Daniels found that Foster was not disabled under section 1614(a)(3)(A) of the Act. [*Id.*, p. 189] Foster appealed the ALJ's determination to the Social Security Administration's ("SSA") Appeals Council. However, her appeal was denied on September 19, 2014. [*Id.*, pp. 1–7]

Foster was 41 years-old when her alleged disability began, and 43 years-old at the time of ALJ Daniels' decision. [Tr., p. 197] She has completed ninth grade and previously cared for children and cleaned houses and hotels. [*Id.*, p. 326] After considering the testimony presented during the administrative hearing and reviewing the record, the ALJ concluded that Foster suffers from three severe impairments: (i) obesity; (ii) type II diabetes mellitus with possible neuropathy in the hands and feet; and (iii) degenerative joint disease ("DJD") of the right ankle. [*Id.*, p. 182] Notwithstanding these impairments, the ALJ determined that the Claimant maintained the residual functional capacity ("RFC") to perform sedentary work, with the following constraints:

> occasionally lifting or carrying 20 pounds and frequently lifting or carrying 10 pounds; sitting for 2 hours in an 8-hour period and standing/walking for 2 hours in an 8-hour period. She can occasionally climb ramps or stairs, ladders, ropes, or scaffolds; kneel; crouch; or crawl. She has no limits in balancing or stooping. She can perform frequent fingering bilaterally and needs to avoid concentrated exposure to hazards.

[Tr., p. 185]

After considering Foster's age, education, work experience, and RFC, ALJ Daniels concluded that the Claimant could perform a significant number of jobs in the national

economy, including: tester-inspector, laborer, bench worker, and machine tender.  [*Id.*, p. 189]  As a result, the ALJ determined that Foster was not disabled from November 28, 2010, through the date of the administrative hearing.  [*Id.*]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that she suffers from a severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the

Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform his past work.  If she can, she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court.  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also

supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).   In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

## III.

First, Foster argues that the ALJ erred by finding that she does not have additional severe impairments related to her knees, feet, hands, and wrists.  [Record No. 11, p. 6]  Second, she asserts that substantial evidence does not support the ALJ's RFC finding.  [*Id.*, p. 8]  In support of the latter claim, Foster alleges that the ALJ improperly evaluated the medical opinions and her own subjective complaints.  [*Id.*]

### A.     Severe Impairments

Foster claims that the ALJ erred in concluding that her allegations regarding her knees, feet, hands, and wrists describe non-severe impairments.  [Record No. 11, p. 6]  Under 20 C.F.R. § 404.1521(a), an impairment is not severe if it "does not significantly alter [the claimant's] physical or mental ability to do basic work activities."  These activities include: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling.  20 C.F.R. § 1521(b)(1).  At step one, the ALJ must find an impairment reasonably expected to produce the alleged symptoms.  Then, at step two, he must determine whether the symptoms cause a limitation that has more than a minimal effect on the individual's ability to do basic work activities.  S.S.R. 96-3p, 1996 WL 374181, at *2 (July 2, 1996).

- 5 -

Step two of the analysis is a *de minimus* hurdle. *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986). Thus, an impairment can only be considered non-severe if it is so slight that it could not result in a finding of disability no matter how adverse the claimant's vocational factors might be. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Foster takes issue with the ALJ's analysis at this step, pointing primarily to consultative examiner ("CE") Dr. Haziq's opinion. [Record No. 11, p. 6]

## 1. Dr. Haziq's Opinion

The ALJ found that Foster has three severe impairments: obesity, diabetes mellitus with possible neuropathy in the hands and feet, and DJD of the right ankle. [Tr., p. 182] Focusing on Dr. Haziq's opinion, the Claimant argues that the ALJ erred in concluding that her allegations regarding other areas of her body describe non-severe impairments. [Record No. 11, p. 6] For example, Dr. Haziq noted "pain, tenderness, swelling, and crepitation with mild limitation of movement" in Foster's knees. [Tr., p. 446] He also noted pain, tenderness, and swelling in both ankles, but moderate limitations of movement in only the right ankle. [*Id.*] With respect to Foster's wrists, the CE's impression was that she experienced pain, numbness, tingling, reduced dexterity, and possible neuropathy. [*Id.*, p. 447] And regarding her hands, Dr. Haziq found grip weakness, pain, and swelling and indicated that Foster had difficulty picking up a coin and maneuvering buttons. [*Id.*, p. 446] Based on these observations, Foster claims that the ALJ did not properly evaluate Dr. Haziq's opinion.

An examining physician's opinion is not entitled to any special deference or consideration. 20 C.F.R. §§ 404.1527(c); 416.927(c). The ALJ determines the appropriate

- 6 -

weight to give to an examining physician's medical opinion by considering: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) the supportability of the opinion; (iv) the consistency of the opinion with regard to the record as a whole; (v) whether the treating source is a specialist in the area of his or her opinion; and (vi) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)–(6).  The ALJ must always give "good reasons" for accepting or rejecting a medical opinion.  20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); S.S.R. 96- 2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ properly evaluated Dr. Haziq's opinion.  First, he listed Dr. Haziq's findings regarding the Claimant's knees and ankles, noting that Dr. Haziq, himself, described her knee limitations as "mild."  [Tr., p. 182, *referring to* p. 446]  The ALJ also recorded Dr. Haziq's observation that only the right ankle demonstrated a moderate limitation in range of motion.  [*Id.*]

Further, the ALJ compared Dr. Haziq's findings with a "host of imaging from April 2013," which included "many negative studies."[1]  [*Id.*, p. 182, *referring to* pp. 462–73]  For instance, when primary care physician Sheila Virgin evaluated radiographs of Foster's ankles, she found marked differences.   On the left ankle radiograph, she observed enthesophytes,[2] a dystrophic calcification that "**could** reflect a large os trigonum,"

---

[1]    Thus, contrary to the Claimant's assertion, the ALJ did not fail to reference findings adverse to Dr. Haziq's opinion.  [Record No. 11, p. 8]

[2]    An enthesophyte is a bony spur forming at a ligament or tendon insertion into bone.  Juliet Rogers, et al., *Bone Formers: Osteophyte and Enthesophyte Formation are Positively Associated*, 1997 THE EULAR JOURNAL 85.

unremarkable soft tissues, and no other significant degenerative changes. [*Id.*, p. 469] In contrast, on the right ankle radiograph, she observed both enthesophytes **and** osteophytes,[3] a **prominent** os trigonum, and degenerative changes such as narrowing of the joint space. [*Id.*, p. 468] The additional injuries on the right ankle, combined with Dr. Haziq's finding that only the right ankle had a moderate limitation in movement, support the ALJ's determination that the left ankle impairment was not severe.

While the radiographs of the Claimant's knees demonstrate tricompartmental degenerative changes with joint space narrowing and osteophyte formation, the ALJ was entitled to consider this evidence in light of Dr. Haziq's opinion, which concluded that the knee limitations were "mild." The Court will not reweigh the evidence. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). The ALJ followed 20 C.F.R. § 416.927(c)(4) by comparing Dr. Haziq's opinion with the objective medical evidence in assessing the severity of Foster's knee impairments.

Additionally, in evaluating Foster's hand radiographs, Dr. Virgin found normal bone mineralization, preserved joint spaces, unremarkable soft tissues, and a lack of erosions. [*Id.*, p. 463] The ALJ could reasonably conclude from these radiographs that Dr. Haziq's opinion was entitled to less weight. Moreover, in evaluating Foster's wrists, Dr. Virgin found no fractures or dislocations and noted unremarkable soft tissues and preserved joint spaces. [*Id.*, pp. 471, 473] Again, the ALJ acted properly in comparing Dr. Haziq's opinion with these findings in assessing the severity of Foster's impairments. 20 C.F.R. § 416.927(c)(4).

---

3       An osteophyte is a lateral outgrowth of bone that is associated with osteoarthritis. Both enthesophytes and osteophytes are skeletal responses to stress. *Id.*

To the extent Foster claims to have severe impairments in "other areas of her body," Dr. Virgin's findings support the ALJ's determination.  For example, radiographs of Foster's pelvis, left shoulder, and right elbow were "unremarkable."  [*Id.*, pp. 462, 466, 467]  And while Foster's right shoulder showed joint space narrowing and osteophyte formation, Dr. Virgin characterized these degenerative changes as "mild."  [*Id.*, p. 465]  Finally, the left elbow showed degenerative changes and the presence of an enthesophyte, but no other significant degenerative changes and no joint effusion.  [*Id.*, p. 472]  These findings suggest that the Claimant's impairments do not significantly alter her ability to do basic work activities.   20 C.F.R. § 404.1521(a).  By weighing Dr. Haziq's opinion with the record as a whole, the ALJ followed the regulations.  Thus, he did not err in determining that Foster had no other severe impairments.

## 2.    Harmless Error

Even if the ALJ should have concluded that Foster had other severe impairments, this Court would not remand the matter for further administrative proceedings because the ALJ did not deny Foster's claim at step two of the five-step analysis.  Once the ALJ finds a severe impairment, he must then consider a plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).  "The fact that some of [a plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.*; *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

In the present case, the ALJ considered the Claimant's musculoskeletal impairments in the remaining steps of the sequential analysis.  For example, in determining whether the

- 9 -

Claimant's combination of impairments meets or medically equals a listed impairment, the ALJ considered the grip weakness in Foster's hands. [Tr., p. 185] In addition, he noted the 5/5 muscle testing in Foster's bilateral lower extremities and that she does not use an assistive device. [*Id.*]

Further, in determining the Claimant's RFC, the ALJ discussed her ankle pain, which was confirmed by imaging that showed moderate to severe osteoarthritis. [Tr., p. 187] He also noted the relief provided by treatment, which included a brace and physical therapy. [*Id.*] After evaluating the objective medical evidence, the ALJ stated, "[b]ecause of these findings, the undersigned limits the claimant to a range of sedentary work." [*Id.*]

Moreover, the ALJ concluded that Foster required additional limitations for her RFC because of her ankle, knee, hand, and wrist impairments. For instance, he limited Foster to sitting and standing two hours (each) per day. [*Id.*] He also stated that she could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds. [*Id.*] In addition, the ALJ made a specific finding on Foster's ability to use her hands, stating that she can "perform frequent fingering bilaterally." [*Id.*] He came to this conclusion after evaluating the Claimant's lack of treatment for her neuropathy[4] and the daily activities in which she is engaged. [*Id.*, pp. 186–87] In summary, because the ALJ considered both Foster's severe and non-severe impairments in assessing the remaining steps of the disability analysis, Foster

---

4      Peripheral neuropathy is often caused by diabetes mellitus. It results in weakness, numbness, and pain, usually in the hands and feet. Medications can reduce the pain. *Peripheral Neuropathy*, MAYO CLINIC,     http://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/basics/definition/con-20019948

was not prejudiced on the merits or deprived of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

## B.      Residual Functional Capacity

Residual functional capacity is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996).   The RFC determination is a matter reserved for the ALJ. *See* 20 C.F.R. § 416.946(c).   In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). An ALJ's RFC finding will be upheld where it is supported by substantial evidence.

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). While a sedentary job primarily involves sitting, it often requires occasional walking and standing. *Id.* Here, the Claimant argues that the ALJ erred in determining that she can perform sedentary work with certain restrictions because he: (i) improperly evaluated the opinion evidence and (ii) failed to provide good reasons for discrediting her testimony. [Record No. 11, p. 8]  However, after a review of the record, the Court does not find Foster's arguments to be persuasive. The ALJ applied the proper legal standards, and his findings are supported by substantial evidence.

### 1.      Opinion Evidence

As an initial matter, Foster may have waived any argument regarding the ALJ's alleged failure to properly evaluate the medical opinions in determining her RFC, as she only

- 11 -

briefly mentions that the physicians' opinions are "consistent" with her own allegations of pain and functional limitations.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).[5]  [Record No. 11, p. 9]  In any event, the ALJ properly evaluated the medical opinions and that substantial evidence supports his RFC finding.

When reviewing medical evidence, the weight the ALJ gives to a medical opinion depends on a variety of factors, including whether the source actually treated the claimant, the supportability of the source's opinion, consistency of the opinion compared with the record as a whole, and other factors.  20 C.F.R. §§ 404.1527(c), 416.927(c). If an opinion is inconsistent with the record, the ALJ has the discretion to give less weight to that opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Here, the ALJ thoroughly discussed the medical opinions, comparing them with the objective medical evidence.  For example, he considered how Foster's diabetes might limit her ability to work, remarking on a May 2012 consultative examination revealing weakness in her grip, and numbness, tingling, and parasthesias in her hands.  [Tr., p. 187]  However, the ALJ also noted that Foster has not experienced emergency complications and that she has not taken medications for her diabetes (and resulting neuropathy) for several years.  [*Id.*]  He then stated that "because there are no more severe findings, the undersigned concludes that the condition does not limit her further."  [*Id.*]  Thus, the ALJ followed 20 C.F.R. §

---

5       "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Id.* (citations and quotation marks omitted).

416.927(c)(4) by comparing the consultative opinion with the record as a whole in assessing Foster's RFC.

Further, the ALJ discussed Dr. Jason Harrod's July 2011 opinion, which focused on Foster's feet and ankle impairments. [Tr., p. 187, *referring to* pp. 426−35] Moreover, he considered the radiologist Dr. Tom Turek's findings. [*Id.*, referring to pp. 396-99] Because of these findings, the ALJ limited Foster to sedentary work. [*Id.*, p. 187] Therefore, the ALJ properly accounted for Dr. Harrod's and Dr. Turek's opinions. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (affirming ALJ's decision where he included treating opinion's limitations in claimant's RFC restrictions).

Finally, the ALJ considered the assessment of the state agency reviewing physician, giving it "some weight." [*Tr.*, p. 188] However, the Claimant should have no disagreement with the ALJ's decision to accord little weight to that opinion, as the ALJ actually determined that the Claimant was more restricted than the physician had determined.[6] [*Id.*] Because the ALJ considered the opinions of treating physicians, CEs, and state agency reviewing physicians in light of the record as a whole, he did not err in concluding that Foster can perform sedentary work with some identified restrictions.

### 2. The Claimant's Credibility

The ALJ is also charged with the responsibility of observing the demeanor and credibility of witnesses. An ALJ's credibility determination is entitled to "great weight and deference," provided it is "reasonable and supported by substantial evidence in the record."

---

6      The state agency reviewing physician found that Foster could stand or walk for four hours per day and sit for six hours per day. [Tr., p. 239−40] However, the ALJ determined that Foster could only stand/walk for two hours per day and sit for two hours per day. [*Id.*, p. 185]

- 13 -

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).   However, credibility determination "cannot be based on an intangible or intuitive notion about an individual's credibility."   S.S.R. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).   As a result, the ALJ must give good reasons for rejecting a claimant's testimony.   *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

First, Foster takes issue with the ALJ's reasons for discrediting her testimony.   The ALJ found that Foster's previous low earnings raised doubts as to the reasons for her unemployment, and that her daily activities contradicted her testimony regarding the severity of her conditions.   [Tr., pp. 186–87]   An ALJ may consider an individual's motivation to work in determining her credibility.   *Brown v. Comm'r of Soc. Sec.*, 1 F. App'x 445, 452 (6th Cir. 2001) (affirming ALJ where he considered claimant's receipt of worker's compensation in assessing claimant's motivation to work).   He may also consider the claimant's prior work history.   *Mullen v. Bowen*, 800 F.2d 535, 547 (6th Cir. 1986) (affirming where ALJ considered: (i) how claimant quit work precisely when he was entitled to retirement benefits; (ii) his receipt of worker's compensation; and (iii) the limited nature of his lifestyle in concluding that claimant had "little incentive to work").   Thus, the ALJ was entitled to consider Foster's lifetime lack of substantial gainful employment in assessing her motivation to work.

Additionally, the ALJ may consider the claimant's daily living activities in assessing her credibility.   20 C.F.R. § 416.929(c)(3); *Crisp v. Sec'y of Health and Human Servs.*, 790 F.2d 450, 453 (6th Cir. 1986).   In the present case, the ALJ noted that Foster can perform light chores, such as folding laundry, dusting, and preparing simple meals.   [Tr., p. 186,

- 14 -

*referring to* pp. 199, 334–38, 375]   Further, he observed that she can drive, shop for groceries, and care for children.   [*Id.*, p. 186, *referring to* pp. 334, 354]   Due to his consideration of these daily activities, the ALJ did not err in according less weight to Foster's allegations regarding the severity of her symptoms.   *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

Foster further argues that these activities do not demonstrate an ability to engage in vocational activity.   [Record No. 11, p. 10]   However, it was reasonable for the ALJ to determine that these activities are consistent with an RFC of sedentary work.   For instance, the Claimant believes that she can walk 25 yards and stand 15 minutes, which fits with the description of sedentary work.   20 C.F.R. § 404.1567(a) (requiring occasional standing and walking).   [Tr., p. 203]   Moreover, Foster estimated that she could lift 15 to 20 pounds, which is also consistent with sedentary work.   20 C.F.R. § 404.1567(a) (requiring an ability to lift 10 pounds).   [*Id.*]   In addition, the ALJ could reasonably conclude that Foster's allegations regarding her wrists and hands were inconsistent with her ability to perform daily chores and take care of children.

## IV.

The ALJ did not err in finding that Foster's only severe impairments are her obesity, her diabetes, and the DJD in her right ankle.   The record of this proceeding demonstrates that the ALJ properly evaluated the medical opinions presented and Foster's credibility.   Likewise, substantial evidence supports his determination that Foster can perform sedentary work, with some restrictions.   Accordingly, it is hereby

**ORDERED** as follows:

- 15 -

1.      Plaintiff Lisa M. Foster's Motion for Summary Judgment [Record No. 11] is **DENIED**.

2.      Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 12] is **GRANTED**.

3.      The decision of Administrative Law Judge Christopher R. Daniels will be **AFFIRMED** by separate Judgment entered this date.

This 25th day of September, 2015.

Signed By:

*Danny C. Reeves*   DCR

**United States District Judge**